## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **ANTHONY FORD,** | |
| *Plaintiff*, | |
| | |
| **v.** | **Case No. _____** |
| | |
| **THE CITY OF MADISONVILLE;** | |
| **DET. SGT. LUCAS CUNNINGHAM;** | |
| **CAPTAIN RICHARD MORRIS; and** | |
| **POLICE CHIEF HERBERT GILBERT,** | |
| *Defendants.* | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Anthony Ford ("Plaintiff") respectfully comes before this Honorable Court pursuant to 42 U.S.C 1983[1], *et seq.* complaining of Defendants The City of Madisonville, Detective Sergeant Lucas Cunningham (in his individual capacity), Captain Richard Morris (in his individual capacity), Police Chief Herbert Gilbert (in his individual capacity). The Defendants acted under color of state law and deprived the Plaintiff of his right to be free from false arrest, malicious prosecution, and excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution. These defendants further violated Plaintiff's First Amendment rights

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

to lawfully record a police encounter with his cell phone.  The Plaintiff specifically alleges and would show unto this Honorable Court the following:

## I.     PARTIES AND ADVERSE PERSON(S)

1.     Plaintiff **ANTHONY FORD** is an individual who resides in Madison County, Texas and may be reached by and through counsel of record: Alexander Houthuijzen, 917 Franklin St. Suite 230, Houston, Texas 77002 Phone: (713) 600-9902 Fax: (832) 565-9003.

2.     Defendant **THE CITY OF MADISONVILLE** is a political subdivision of the State of Texas and may be served with process by serving the Secretary of THE CITY OF MADISONVILLE, Rosa Barrera, at 210 West Cottonwood Street, Madisonville Texas, 77864, or wherever its registered agent may be found.

3.     Defendant **DETECTIVE SERGEANT LUCAS CUNNINGHAM** is a peace officer for the Madisonville Police Department and may be served at the Madisonville Police Department located at 210 West Cottonwood Street, Madisonville Texas, 77864.

4.     Defendant **CAPTAIN RICHARD MORRIS** is a peace officer for the Madisonville Police Department and may be served at the Madisonville Police Department located at 210 West Cottonwood Street, Madisonville Texas, 77864.

5.     Defendant **CHIEF HERBERT GILBERT** is a peace officer for the Madisonville Police Department and may be served at the Madisonville Police Department located at 210 West Cottonwood Street, Madisonville Texas, 77864.

6.     Defendants DETECTIVE SERGEANT LUCAS CUNNINGHAM, CAPTAIN RICHARD MORRIS, and CHIEF HERBERT GILBERT are hereinafter sometimes referred to as

"DEFENDANT OFFICERS" and along with Defendant THE CITY OF MADISONVILLE are collectively referred to as "DEFENDANTS."

## II.  JURISDICTION AND VENUE

7.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 1343(a)(3) and (4) because the Plaintiff's suit arises under 42 U.S.C. 1983.

8.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1342, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

9.      Plaintiff brings this action to redress the unlawful and flagrant excessive force, unlawful arrest, and malicious prosecution against Plaintiff pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution made applicable to DEFENDANTS because of this federal due process violation.

10.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367(a), to hear and decide claims arising under state law.

11.     Venue is proper in this district court pursuant to 28 U.S.C. §1391(b) because DEFENDANTS reside or resided in this district during the relevant time period and all or a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Texas.

12.     All conditions precedent have been performed or have occurred.

### III.     EXHIBITS ATTACHED

13.     EXHIBIT 1:   VIDEO RECORDING OF POLICE ALTERCATION.

14.     The video of the incident has been attached as an exhibit, but due to the inability of counsel to attach that video electronically, a copy has been delivered to the Federal District Clerk to be attached to this case, as EXHIBIT 1 to PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND.

### IV.     BACKGROUND AND FACTS RELEVANT TO ALL COUNTS

15.     Plaintiff hereby attaches as EXHIBIT 1 the video recording of the police altercation that precipitated DEFENDANTS' unconstitutional conduct, actions, and inactions, which EXHIBIT 1 is incorporate by reference as though set forth fully herein as factual support to Plaintiff's factual allegations, claims, causes of action, and damages.

16.     Plaintiff is a black man of African descent; and he is and was, during all relevant times hereto, a citizen of the United States of America.

17.     Defendants DETECTIVE SERGEANT LUCAS CUNNINGHAM is a white man; CAPTAIN RICHARD MORRIS is a white man; and CHIEF HERBERT GILBERT is a black man.

18.     Defendant THE CITY OF MADISONVILLE and its DEFENDANT OFFICERS, at all times relevant hereto, were employed by and acting on behalf of Defendant THE CITY OF MADISONVILLE, as officers with Madisonville Police Department.  In addition, DEFENDANT

OFFICERS' conduct, actions, and/or inactions, individually and in concert with others, includes their conduct, actions, and/or inactions under: Aiding & Abetting; Assisting & Participating; Concert of Action; Actual Authority; and Ratification.

19.     DEFENDANT OFFICERS worked together in joint cooperation and concert of action. With the cooperation, protection, and encouragement of DEFENDANTS, DEFENDANTS – each of them individually, jointly, and/or collectively hid behind the authority of the law. At all times material to this Complaint, DEFENDANTS were acting under color of state law, ordinance and/or regulation, statutes, custom, and usages of Defendant THE CITY OF MADISONVILLE and Madisonville Police Department.

20.     In addition, the DEFENDANTS' conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally violative injuries and damages suffered by Plaintiff, as set forth more fully below.

21.     THE CITY OF MADISONVILLE, as a city in the State of Texas, has an ongoing custom and a historical custom of engaging in investigatory tactics and police procedures that involve excessive force, arrests devoid of probable cause, and starting prosecutions which are only maliciously brought to bring harm upon the person prosecuted. Further, THE CITY OF MADISONVILLE has a custom of violating citizen's First Amendment right to lawfully video record police.

22.     The aforesaid customs include, but are not limited to: (a) executing procedures, purported to be an investigation of crime, but so lacking in logic and meaningful effort as to constitute no meaningful attempt to investigate crime; (b) willfully refusing to engage in proper education so

that a peace officer may know how to use force without excessively causing harm to the citizens; (c) charging citizens with crimes to cover up unethical behavior by law enforcement; (d) intentionally charging citizens with crimes that were created by the police to cover up force that was used to severely injure citizens; (e) failing to train law enforcement how to handle citizens who are video recording police interactions; (f) violating the clearly established right in a free society for a person to be free from unreasonable use of force by an officer, and (g) violating the citizens' clearly established right to due process of law.

23.     DEFENDANTS have certain policymakers who are aware of these shortcomings (though described in different terms), have failed to take any meaningful remedial actions, and, through willful blindness and deliberate difference, have endorsed these customs. These policymakers include but are not limited to: Chief Herbert Gilbert. Further policymakers include the not yet known field training officers of Detective Sergeant Lucas Cunningham whose training is so lacking in any meaningful way that performance of his job is deliberate indifference. These policymakers are parties to this case.

24.     Through the customs laid out above, DEFENDANTS deprived Plaintiff rights, privileges, and immunities secured by the United States Constitution. This deprivation included depriving Plaintiff of Plaintiff's right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution as well as his right to be free from unreasonable use of force. This deprivation also included depriving Plaintiff's guarantee of equal protection by the law prescribed in the Fourteenth Amendment of the United States Constitution. The particulars of these deprivations are described more fully below.

25.     On March 4, 2019, Plaintiff was at home when he heard a commotion outside.

26.     Plaintiff, a black man, came outside to find his neighbor, a black man, whom he had a friendly relationship with being arrested by the police who were all white officers.

27.     Plaintiff immediately ran outside with cell phone in hand.

28.     Plaintiff opened the cell phone, opened the video application on his phone, and began recording, pursuant to his "clearly established" First Amendment Constitutional right to do so.[2] Plaintiff's recording was reasonable, peaceful, conducted during an arrest of a fellow citizen, and from his personal property and on a public road.  All "time, manner, and place restrictions," if any, were reasonably met here as the time was necessary, exigent, and not capable of scheduling.  That is, the fellow citizen that was being arrested was not subject to reproduction, permit application, permission, and the like.  The officers were arresting a fellow citizen and the fear that this arrest of a fellow black man by all white officers could devolve into another George Floyd incident necessitated the filming at that *time* and not later.  As to manner, Plaintiff's recording was peaceful and compliant; he responded respectfully and compliantly to officers' requests in the moments before his body slam.  And, as for place, Plaintiff's recording was from his private land and on a public road.

29.     Plaintiff questioned his neighbor about what he had done to be getting arrested from afar.

30.     As he did so, Sergeant Detective Lucas Cunningham (who was prosecuted for official

---

[2] *See Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017) (holding that a First Amendment right to record the police *does exist*, that the two officers were not entitled to qualified immunity on Fourth Amendment claims of an illegal arrest, and Turner had been subjected to a *de facto* arrest without probable cause to believe that he had committed a crime).

oppression last year) became upset with the prospect of a citizen recording an officer arrest.

31.     Sergeant Detective Lucas Cunningham told Plaintiff to back up and other commands which were both unlawful in nature and not based upon any legal standard of probable cause or reasonable suspicion.

32.     Sergeant Detective Lucas Cunningham told Plaintiff he was going to confiscate Plaintiff's phone as a piece of evidence in the case against the neighbor.

33.     Plaintiff told Sergeant Detective Lucas Cunningham that he had a lawful right to record and that he was going to continue his recording.

34.     Sergeant Detective Lucas Cunningham became upset and approached Plaintiff demanding the phone. As can be seen in the video, Sergeant Detective Lucas Cunningham approached Plaintiff with no probable cause or reasonable suspicion and demanded the phone which he knocked from the Plaintiff's grasp.  Then, Sergeant Detective Lucas Cunningham grabs Plaintiff's left arm and spins Plaintiff and Plaintiff's arm around forcefully behind Plaintiff's back, and then pushes Plaintiff into the bushes/hedges directly in front of a metal pipe sticking out of the ground – nearly impaling Plaintiff.  The pipe is seen in the pictures below:

///

| BUSHES/HEDGES W/ METAL PIPE | METAL PIPE – ZOOMED IN |
|---|---|



Sergeant Detective Lucas Cunningham is still holding onto Plaintiff's arm behind Plaintiff's back arching upward (injuring Plaintiff's shoulder), and two other officers rush over and try to push Plaintiff to the ground. Still underneath Plaintiff was the above-pictured, exposed metal pipe. Afraid he would be impaled and that the pipe would pierce his body and kill him, Plaintiff arched his back upward and away from the ground and exposed metal pipe (injuring Plaintiff's back) – necessarily resisting[3] DEFENDANT OFFICERS' use of force. Three officers went hands on and either knowingly or unwittingly were trying to force Plaintiff to the ground with an exposed metal pipe below him and exactly where his body was headed.  At the cost and injury to his shoulder and back, fortunately, Plaintiff was not impaled – though he was brought forcefully to the ground,

---

[3] "A suspect's resistance during arrest is justified by Texas Penal Code § 9.31(c), which states: "The use of force to resist an arrest or search is justified: (1) if, before the actor offers any resistance, the peace officer (*or person acting at his direction*) uses or attempts to use greater force than necessary to make the arrest or search; and (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (*or other person's*) use or attempted use of greater force than necessary." *Ramirez v. Martinez*, 716 F.3d 369, 376-377 (5th Cir. Tex. 2013) (emphasis added).

submitted, and was cuffed.

35.     Sergeant Detective Lucas Cunningham levied numerous prosecutions based on nothing at all to arrest Plaintiff. Devoid of probable cause, Plaintiff's alleged crimes included (1) resisting arrest, (2) search or transport, (3) interfering with public duties, (4) standing in prohibited area, and (5) disregard for a police officer. *ALL charges have been dismissed*.

36.     Also, as Sergeant Detective Lucas Cunningham arrested Plaintiff for these numerous unfounded charges, he began to treat him with the utmost disrespect and placed handcuffs too tightly around his wrists – thereafter yanking Plaintiff around by the chain links.

37.     DEFENDANTS' custom or policy of using excessive force to overcome citizens' rights when an officer is unsure of how to act or how to gain compliance to quell a nonviolent situation is what caused the deprivation of Plaintiff's constitutional rights.  This use of force was unreasonable given the situation, and Sergeant Detective Lucas Cunningham should be investigated and disciplined for his conduct.

38.     To quote the words of Attorney Erica MacDonald, who spoke after the death of George Floyd, "If an officer is acting under color of state law, and acts to deprive anyone of the rights given to them by the Constitution… they are in violation of federal criminal law." Plaintiff would encourage law enforcement at every level to investigate this case as police officers across this nation use excessive force to gain compliance; only two things remain clear: the police must stop harming the citizens and they must be held accountable for their actions just like everybody else.

39.     What's more, Plaintiff's injuries were precipitated by Plaintiff's lawful conduct and clearly

established rights and DEFENDANTS unlawful actions/inactions[4].   Specifically, Sergeant Detective Lucas Cunningham actions were unlawful, and Captain Richard Morris and Chief Herbert Gilbert are culpable for their inaction for failure to intervene.  That is, they assisted, failed to intervene, and ratified the unlawful actions of Sergeant Detective Lucas Cunningham.

40.     When pushing Plaintiff into the bushes and pulling him towards his police car, Sergeant Detective Lucas Cunningham's forcefulness caused Plaintiff to suffer a rotator cuff injury so substantial that it will require surgery. Plaintiff also has suffered numerous back injuries from the assaultive behavior of Sergeant Detective Lucas Cunningham.  Plaintiff has suffered significant injuries and damages, as set forth more fully below, and seeks redress for same, as permitted by law and the Constitution of the United States.

## V.     42 U.S.C. § 1983 CLAIMS/CAUSES OF ACTION/COUNTS – *APPLICABLE TO ALL COUNTS HEREIN*

41.     Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained in paragraphs 15 through 40 and EXHIBIT 1 to support Plaintiff's elements, claims, causes of action, and counts.

42.     Pursuant to 42 USC § 1983, DEFENDANTS, "under color of state law," "subject[ed] or cause[d] to be subject[ed Plaintiff]," a "citizen of the United States," the deprivation of [his] "rights, privileges, or immunities secured by the Constitution and laws," [and] "[should be held liable] to

---

[4] Plaintiffs' §1983 claims rely not only on DEFENDANT OFFICERS' actions, but also their *inactions* or *omissions*.  *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (holding that that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's or agent's use of excessive force may be liable under § 1983.).

[Plaintiff] in an action at law, suit in equity, or other proper proceeding for redress."

43.     Plaintiff invokes his Constitutional rights, under the 1st, 4th, and 14th Amendments to the United States Constitution – to wit:

      a.     Right to be Free from Unreasonable Searches and Seizures;

      b.     Right to be Free from Excessive Force;

      c.     Right to be Free from False Arrest;

      d.     Failure to Intervene;

      e.     Substantive Due Process Rights (Life, Liberty, and Property); and

      f.     Right to Record Police.

44.     At all times relevant to this incident, Plaintiff was a United States citizen male of African-American ethnicity.

45.     At all times relevant to this incident, Plaintiff had committed no crime; was not under arrest; his Miranda Rights were not read to him; and he was not a threat to himself or others. Inexplicably, Plaintiff was placed "in custody" and arrested on charges that were later all dismissed.

46.     At all times relevant to this incident, DEFENDANT OFFICERS were duly appointed police officers for Madisonville Police Department and THE CITY OF MADISONVILLE.

47.     At all times relevant to this incident, DEFENDANTS were acting "under color of state law." That is, DEFENDANT OFFICERS were (i) on duty, (ii) in uniform, (iii) were using departmental issued and approved equipment, (iv) departmental policies/procedures/customs permitted, prohibited, and/or were unconstitutionally silent on their actions and/or inactions, and

THE CITY OF MADISONVILLE approved its DEFENDANT OFFICERS' actions and/or inactions.

48.     At all times relevant to this incident, Plaintiff's rights under the 1st, 4th, and 14th Amendment rights/claims arose when Plaintiff was "seized" – that is:

      a.    when DEFENDANT OFFICERS terminated Plaintiff's freedom of movement through a means intentionally applied[5];

      b.    when Plaintiff, a reasonable person, believed he was not free to leave[6];

      c.    when  DEFENDANT OFFICERS purposely detained Plaintiff but used more force than intended/necessary[7];

      d.    when Plaintiff voluntarily submitted to being put in handcuffs and submitted to DEFENDANTS' authority; and

      e.    when Plaintiff was wrongfully, unlawfully, and falsely arrested, restrained, detained, and handcuffed.

46.     Plaintiff's rights under the 14th Amendment further arose when DEFENDANTS created a dangerous situation when it used excessive force, escalated the situation, and failed and/or refused to protect Plaintiff; and, when DEFENDANTS restrained Plaintiff's personal liberty failed and/or refused to protect Plaintiff.

---

[5] *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989).

[6] *Breadline v. California*, 551 U.S. 249, 255 (2007).

[7] *Vathekan v. Prince George's County*, 154 F.3d 173, 178 (4th  Cir. 1998).

49.     At all times relevant to this incident, DEFENDANTS' use of force was Constitutionally violative because Plaintiff's arrest was unlawful and excessive force was used.[8]"

50.     At all times relevant to this incident, DEFENDANTS – each and every one of them – failed to have their audio and visual recording devises on and recording during the incident in question and in direct violation of DEFENDANTS' policies, procedures, practices, and customs, which actions were not punished by and later ratified by THE CITY OF MADISONVILLE.

51.     At all times relevant to this incident, THE CITY OF MADISONVILLE and DEFENDANT OFFICERS deprived Plaintiff of his right to be free from excessive force – a right secured by the US Constitution. DEFENDANTS' failure to intervene and stop the excessive force further violated this right. DEFENDANTS' lack of training on use of force and excessive force further violated this right. DEFENDANTS' failure to supervise and their lack of enforcement of their written audio/visual-recording policy further violated this right by allowing the conduct of excessive force to go on with impunity and ignorance to same.  DEFENDANTS' policy and absence of official policy, in the face of clearly known Constitutional law and known violations, inflicted a deprivation of Plaintiff's Constitutional rights.  DEFENDANTS' policy and absence of policy, also established through ratification, inflicted a deprivation of Plaintiff's Constitutional rights. DEFENDANTS disregarded a known consequence of risk of serious bodily injury could occur due to their lack of training; vague, ambiguous, and non-specific definitions of use of force; with no

---

[8] *Ramirez v. Martinez*, 716 F.3d 369, 376-377 (5th Cir. Tex. 2013) (holding that a Defendant Officers' force is justified to effectuate an arrest so long as the arrest is lawful and excessive force is not used.).

written policy on excessive force; and no supervising the use of force through failure in their policy to adhere to audio/visual recording policy inflicted a deprivation of Plaintiff's Constitutional rights.   These described actions and inactions amounted to DEFENDANTS' deliberate indifference and were the "moving force" behind the constitutional violation alleged herein.

52.    Municipal liability is also alleged herein based on THE CITY OF MADISONVILLE's failure to train, which failure to train was a deliberate indifference to Plaintiff's rights.  Here, THE CITY OF MADISONVILLE failed to train its employees with respect to a clear constitutional duty/duties that arises in situations that its employees are certain to face.  And, THE CITY OF MADISONVILLE failed to train its employees with respect to a clear constitutional duty/duties that arise where the need for training is not obvious at the outset, but a pattern of violations put THE CITY OF MADISONVILLE on notice of the need to train.   THE CITY OF MADISONVILLE had knowledge of the potential for constitutional violations and either authorized, condoned, approved, or assisted in the violation of Plaintiff's constitutional rights. What's more, THE CITY OF MADISONVILLE and its policymakers "implicitly or explicitly adopted and implemented" the above-described careless and reckless policies or had actual or constructive knowledge of such policies.

53.    At all times relevant to this incident, THE CITY OF MADISONVILLE and DEFENDANT OFFICERS proceeded with conscious and deliberate indifference to the safety and welfare of Plaintiff.

54.    At all times relevant to this incident, Defendant Sergeant Detective Lucas Cunningham's conduct was "plainly incompetent" and/or was a "knowing violat[ion of] the law."

55.     At all times relevant to this incident, DEFENDANT OFFICERS' conduct was "plainly incompetent" and/or was a "knowing violat[ion of] the law."

56.     At all times relevant to this incident, THE CITY OF MADISONVILLE and DEFENDANT OFFICERS engaged in the conduct complained of herein, which conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

57.     Plaintiff seeks unliquidated damages within the jurisdictional limitations of the court.

## VI.    CAUSES OF ACTION — COUNT 1: VIOLATIONS OF THE FIRST AMENDMENT (AS TO ALL DEFENDANTS)

58.     Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained in paragraphs 13-14, 15-40, 41-57, and EXHIBIT 1 to support Plaintiff's elements, claims, causes of action, and counts.

59.     In stopping Plaintiff from continuing to video record the Madisonville Police who were arresting Plaintiff's neighbor, Defendant Cunningham violated Plaintiff's First Amendment rights.

60.     In *Fields v. City of Philadelphia*, the right to video record the police was held to be lawful; more specifically, the holding states that "the First Amendment protects the act of photographing, filming or otherwise recording police officers conducting their official duties in public." *Fields v. City of Philadelphia*, 862 F.3d 353 (3rd Cir. 2017). The Court further held that this was a clearly established right.

61.     In *Turner v. Lieutenant Driver*, the Fifth Circuit posited that "First amendment principles controlling authority, and persuasive precedent demonstrate that the First Amendment right to

record the police does exist, subject only to reasonable time, place, and manner restrictions." *Turner v. Lieutenant Driver*, 848 F.3d 678 (5ᵗʰ Cir. 2017).

62.     Plaintiff opened the cell phone, opened the video application on his phone, and began recording, pursuant to his "clearly established" First Amendment Constitutional right to do so.[9] Plaintiff's recording was reasonable, peaceful, conducted during an arrest of a fellow citizen, and from his personal property and on a public road.  All "time, manner, and place restrictions," if any, were reasonably met here as the time was necessary, exigent, and not capable of scheduling.  That is, the fellow citizen that was being arrested was not subject to reproduction, permit application, permission, and the like.  The officers were arresting a fellow citizen and the fear that this arrest of a fellow black man by all white officers could devolve into another George Floyd incident necessitated the filming at that *time* and not later.  As to manner, Plaintiff's recording was peaceful and compliant; he responded respectfully and compliantly to officers' requests in the moments before his body slam.  And, as for place, Plaintiff's recording was from his private land and on a public road.

63.     Furthermore, as evident in the current situation, throughout THE CITY OF MADISONVILLE there is a pervasive custom in the police department to stop video-recordings of the police and it has become the unwritten policy in that municipality. Furthermore, Defendant Cunningham's abridgment of free expression by Plaintiff in videotaping the police was a clearly-

---

[9] *See Turner v. Driver*, 848 F.3d 678 (5ᵗʰ Cir. 2017) (holding that a First Amendment right to record the police *does exist*, that the two officers were not entitled to qualified immunity on Fourth Amendment claims of an illegal arrest, and Turner had been subjected to a *de facto* arrest without probable cause to believe that he had committed a crime).

established right at the time when Cunningham prevented Plaintiff from videotaping the police in a private and public place.

64.    Simply put, citizens have the right to be present in a public forum. *See United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222, 88 S. Ct. 353, 19 L. Ed. 2d 426 (1967) ("[T]he rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights.").

65.    First, DEFENDANTS acted under color of state law.  Second, DEFENDANTS deprived Plaintiff of his federal, constitutional right to video record under the First Amendment.  And, third, DEFENDANTS' deprivation of Plaintiff's constitutional right injured Plaintiff and caused Plaintiff's damages.

66.    Here, when Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM took Plaintiff's phone from him, a reasonable officer would not have retaliated against Plaintiff for exercising his clearly established First Amendment Right to video record, under these facts. Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

67.    Here, when Defendant CAPTAIN RICHARD MORRIS witnessed Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions, Defendant CAPTAIN RICHARD MORRIS assisted, participated, conspired, aided and abetted Defendant DETECTIVE

SERGEANT LUCAS CUNNINGHAM's actions knowing himself that his actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.  What's more, as a supervisor to Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM, Defendant CAPTAIN RICHARD MORRIS had actual knowledge of his subordinate's violation of Plaintiff's Constitutional rights and acquiesced in that violation, and he, with deliberate indifference to the consequences, established and maintained a policy, practice, and/or custom which directly caused the violation.  Additionally, he followed the unconstitutional custom of stopping videorecording of police, was aware that an unreasonable risk existed in stopping videorecording of police and that same would result in physical confrontation and personal injury or death, was deliberately indifferent to that risk, and that following the unconstitutional custom and failing to implement a Constitutional policy would result in the violation of Plaintiff's Constitutional rights.  What's more, Defendant CAPTAIN RICHARD MORRIS had a duty to intervene to prevent the violation of Plaintiff's Constitutional right to videorecord and be free from excessive force, he had a reasonable opportunity to intervene, and he failed to intervene.  What's more, Defendant CAPTAIN RICHARD MORRIS approved Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions, his decision to take those actions, and the basis for those decisions and actions, which amounts to ratification.

68.     Here, Defendant CHIEF HERBERT GILBERT, as a supervisor to Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM, Defendant CHIEF HERBERT GILBERT

had actual knowledge of his subordinate's violation of Plaintiff's Constitutional rights and acquiesced in that violation, and he, with deliberate indifference to the consequences, established and maintained a policy, practice, and/or custom which directly caused the violation.  Additionally, he followed the unconstitutional custom of stopping videorecording of police, was aware that an unreasonable risk existed in stopping videorecording of police and that same would result in physical confrontation and personal injury or death, was deliberately indifferent to that risk, and that following the unconstitutional custom and failing to implement a Constitutional policy would result in the violation of Plaintiff's Constitutional rights.  What's more, Defendant CHIEF HERBERT GILBERT had a duty to intervene to prevent the violation of Plaintiff's Constitutional right to videorecord and be free from excessive force, he had a reasonable opportunity to intervene, and he failed to intervene.  What's more, Defendant CHIEF HERBERT GILBERT approved Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions, his decision to take those actions, and the basis for those decisions and actions, which amounts to ratification. Defendant CAPTAIN RICHARD MORRIS's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

69.     Here, THE CITY OF MADISONVILLE, through its Madisonville Police Department, has no written policy or a constitutionally deficient written policy on recording police because it does not affirmatively set forth the First Amendment right to record police activity, does not include examples of places and situations where the right exists and does not exist, does not include a

range of prohibited responses to citizens recording the police, does not clearly describe when an individual's actions amount to interference with police duties and that criticizing police does not constitute interference, and does not advise citizens of alternative "less-intrusive" locations to observe or record from. On the contrary, THE CITY OF MADISONVILLE, through its Madisonville Police Department, has the practice, custom, and usage of stopping any and all video recordings of police. What's more, THE CITY OF MADISONVILLE, through its Madisonville Police Department, has *Monell* liability for its constitutionally deficient policy; its constitutionally deficient practice, custom, and usage; its supervisory responsibility failures of Defendants CAPTAIN RICHARD MORRIS and CHIEF HERBERT GILBERT of Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM; its ratification of Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's decision, actions, and the basis for his decisions and actions; and for failure to train and supervise, as set forth below. Defendant THE CITY OF MADISONVILLE's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

70.     Plaintiff seeks unliquidated damages within the jurisdictional limitations of the court.

### VII.    CAUSES OF ACTION — COUNT 2: 42 U.S.C. 1983 UNREASONABLE SEARCHES AND SEIZURES (AS TO ALL DEFENDANTS)

71.     Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained in paragraphs 13-14, 15-40, 41-57, and EXHIBIT 1 to support Plaintiff's elements, claims, causes of action, and counts.

72.     During all relevant time periods complained of herein, Plaintiff had a right to be free from unreasonable searches and seizures that was protected by both the Fourth Amendment and Fourteenth Amendment to the United States Constitution. This violation of this right forms the basis of the Plaintiff's claim.

73.     The Plaintiff's right to be free from unreasonable searches and seizures was violated when the events described in this complaint unfolded.

74.     During all relevant time periods complained of herein, Plaintiff was "seized" – that is:

  a.     when DEFENDANT OFFICERS terminated Plaintiff's freedom of movement through a means intentionally applied[10];

  b.     when Plaintiff, a reasonable person, believed he was not free to leave[11];

  c.     when  DEFENDANT OFFICERS purposely detained Plaintiff but used more force than intended/necessary[12];

  d.     when Plaintiff voluntarily submitted to being put in handcuffs and submitted to DEFENDANTS' authority; and

  e.     when Plaintiff was wrongfully, unlawfully, and falsely arrested, restrained, detained, and handcuffed.

---

[10] *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989).

[11] *Breadline v. California*, 551 U.S. 249, 255 (2007).

[12] *Vathekan v. Prince George's County*, 154 F.3d 173, 178 (4th  Cir. 1998).

75.     During all relevant time periods complained of herein, the officers complained of were acting under color of state law because; there was no crime committed by Plaintiff; Plaintiff did not pose a threat to himself or others; there was *no* probable cause to arrest Plaintiff; there was *no* arrest warrant pursued and issued against Plaintiff pursuant to the Texas Code of Criminal Procedure; there was no active resisting of arrest or attempting to evade arrest by flight; DEFENDANTS arrested and jailed the Plaintiff but did not do so pursuant to the Texas Code of Criminal Procedure; and DEFENDANTS took certain actions to encourage the Madisonville District Attorney to accept or otherwise maintain criminal charges against Plaintiff. But for their status as peace officers, DEFENDANTS would not have been able to perpetrate the wrongs complained of in this Complaint.

76.     Additionally, DEFENDANT OFFICERS, while acting within their official capacity, deprived Plaintiff of his constitutional rights to be free from unfounded arrest and bad faith prosecution. A claim of false arrest implicates guarantees of the Fourth and Fourteenth Amendments and, therefore, is actionable under § 1983. *See Sorenson v. Ferrie,* 134 F.3d 325, 328 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299,1305 (5th Cir. 1995); *Sanders v. English,* 950 F.2d 1152, 1159 (5th Cir. 1992); *Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir. 1988). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *See Blessing v. Freestone,* 520 U.S. 329, 340, 137 L. Ed. 2d 569, 117 S. Ct. 1353 (1997); *Daniels v. Williams,* 474 U.S. 327, 330, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986); *Augustine v. Doe,* 740 F.2d 322, 324-25 (5th Cir. 1984).  Here, and again, there was *no*  probable cause to arrest Plaintiff.

No reasonable person would believe, based on the facts known at the time of arrest, that Plaintiff has committed, is committing, or is about to commit a crime. And, no report by a credible witness, victim, or person, whether true or untrue, exists to justify probable cause for Plaintiff's false arrest.

77.     The foregoing actions amounted to a clear violation of the Plaintiff's clearly established, Constitutional rights.

78.     Here, Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM unlawfully searched, seized, arrested, and prosecuted Plaintiff. Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

79.     Here, when Defendant CAPTAIN RICHARD MORRIS witnessed Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions, Defendant CAPTAIN RICHARD MORRIS assisted, participated, conspired, aided and abetted Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions knowing himself that his actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below. What's more, as a supervisor to Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM, Defendant CAPTAIN RICHARD MORRIS had actual knowledge of his subordinate's violation of Plaintiff's Constitutional rights and acquiesced in that violation, and he,

with deliberate indifference to the consequences, established and maintained a policy, practice, and/or custom which directly caused the violation.  What's more, Defendant CAPTAIN RICHARD MORRIS had a duty to intervene to prevent the violation of Plaintiff's Constitutional rights, he had a reasonable opportunity to intervene, and he failed to intervene.  What's more, Defendant CAPTAIN RICHARD MORRIS approved Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions, his decision to take those actions, and the basis for those decisions and actions, which amounts to ratification.

80.     Here, Defendant CHIEF HERBERT GILBERT, as a supervisor to Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM, had actual knowledge of his subordinate's violation of Plaintiff's Constitutional rights and acquiesced in that violation, and he, with deliberate indifference to the consequences, established and maintained a policy, practice, and/or custom which directly caused the violation.  Additionally, he followed the unconstitutional custom of searching, seizing, arresting, and prosecuting persons for videorecording of police, was aware that an unreasonable risk existed in that practice and that same would result in physical confrontation and personal injury or death, was deliberately indifferent to that risk, and that following the unconstitutional custom and failing to implement a Constitutional policy would result in the violation of Plaintiff's Constitutional rights.  What's more, Defendant CHIEF HERBERT GILBERT had a duty to intervene to prevent the violation of Plaintiff's Constitutional right, he had a reasonable opportunity to intervene, and he failed to intervene.  What's more, Defendant CHIEF HERBERT GILBERT approved Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions, his decision to take those actions, and the basis for those

decisions and actions, which amounts to ratification.   Defendant CAPTAIN RICHARD MORRIS's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

81.     Here, THE CITY OF MADISONVILLE, through its Madisonville Police Department, has *Monell* liability for its constitutionally deficient policy; its constitutionally deficient practice, custom, and usage; its supervisory responsibility failures of Defendants CAPTAIN RICHARD MORRIS and CHIEF HERBERT GILBERT of Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM;   its   ratification   of   Defendant   DETECTIVE   SERGEANT   LUCAS CUNNINGHAM's decision, actions, and the basis for his decisions and actions; and for failure to train and supervise, as set forth below.  Defendant THE CITY OF MADISONVILLE's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

82.     Plaintiff seeks unliquidated damages within the jurisdictional limitations of the court.

## VIII.   CAUSES OF ACTION — COUNT 3: 42 U.S.C. 1983 EXCESSIVE FORCE (AS TO ALL DEFENDANTS)

83.     Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained in paragraphs 13-14, 15-40, 41-57, and EXHIBIT 1 to support

Plaintiff's elements, claims, causes of action, and counts.

84.     Plaintiff further complains of DEFENDANTS and would show that the Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM used excessive force against Plaintiff in effectuating his arrest, again, when his only conduct was to video record the police interaction with a neighbor.

85.     During all relevant time periods complained of herein, the officers complained of were acting under color of state law because; there was no crime committed by Plaintiff; Plaintiff did not pose a threat to himself or others; there was *no* probable cause to arrest Plaintiff; there was *no* arrest warrant pursued and issued against Plaintiff pursuant to the Texas Code of Criminal Procedure; there was no active resisting of arrest or attempting to evade arrest by flight; DEFENDANTS arrested and jailed the Plaintiff but did not do so pursuant to the Texas Code of Criminal Procedure; and DEFENDANTS took certain actions to encourage the Madisonville District Attorney to accept or otherwise maintain criminal charges against Plaintiff. But for their status as peace officers, DEFENDANTS would not have been able to perpetrate the wrongs complained of in this Complaint.

86.     Carefully balancing of the nature and quality of the intrusion on Plaintiff's 4th Amendment interest against the countervailing governmental interest at stake, DEFENDANTS, namely DETECTIVE SERGEANT LUCAS CUNNINGHAM and CAPTAIN RICHARD MORRIS, used excessive force against Plaintiff, pursuant to *Graham v. Connor*, 490 U.S. 386, 395-96 (1989), that was unnecessary in light of the circumstances – to wit:

    a.     when they went hands-on with Plaintiff when Plaintiff was engaged in a lawful, constitutionally-protected act;

b. when DETECTIVE SERGEANT LUCAS CUNNINGHAM flung Plaintiff's arm behind his back and arched upwards, putting stress on the scapula, shoulder, and rotator cuff;

c. when they flung and body slammed Plaintiff to the ground above an upright, exposed metal pipe capable of impaling and killing Plaintiff;

d. when they were trying to force Plaintiff to his stomach above an upright, exposed metal pipe capable of impaling and killing Plaintiff – causing Plaintiff to arch his back backwards at the waist and back, thereby injuring Plaintiff's back; and

e. when DETECTIVE SERGEANT LUCAS CUNNINGHAM lifted Plaintiff from the ground by the handcuff chain links and flung Plaintiff around, putting stress on the scapula, shoulder, and rotator cuff.

87. DEFENDANTS' use of force was objectively unreasonable in light of the totality of the circumstances confronting the officers, without regard to the officers' underlying intent or motivation[13].  *Graham* at 397.  Specifically, Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM:

a. knew that Plaintiff did not present a danger to himself or others;

b. affirmatively chose to use force that caused injury to Plaintiff; and

c. used force that was excessive to the need.

88. Plaintiff's constitutional right to remain free from excessive force was:

a. secured to him by the Fourth and Fourteenth Amendments to the United States Constitution;

b. violated by Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM;

c. clearly established within both the Fifth Circuit and the Southern District of Texas at all times relevant hereto; and

---

[13] An officer's intent or subjective motivations may be considered by a fact-finder when evaluating the credibility of his testimony. *Graham* at 399.

> d. Plaintiff suffered "(1) an injury," "(2) which resulted from the use of force that was clearly excessive to the need," and "(3) the excessiveness of which was objectively unreasonable" when Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM used excessive force against him, as described above.

89. At all times relevant hereto, all reasonable police officers would have known:

> a. law enforcement officers must only use force that is justified by a need;

> b. the use of force by a law enforcement officer must be objectively reasonable in light of the circumstances;

> c. Plaintiff had a clearly established right to remain free from an unreasonable use of force as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

> d. the quantum of force used by Defendants DETECTIVE SERGEANT LUCAS CUNNINGHAM and CAPTAIN RICHARD MORRIS against Plaintiff was excessive to the need; is impermissible during any detention; was a clear violation of Plaintiff's constitutional rights; and was conduct unbecoming of a police officer.

90. Here, Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

91. Here, when Defendant CAPTAIN RICHARD MORRIS witnessed Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions, Defendant CAPTAIN RICHARD MORRIS assisted, participated, conspired, aided and abetted Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions knowing himself that his actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and

were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.  What's more, as a supervisor to Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM, Defendant CAPTAIN RICHARD MORRIS had actual knowledge of his subordinate's violation of Plaintiff's Constitutional rights and acquiesced in that violation, and he, with deliberate indifference to the consequences, established and maintained a policy, practice, and/or custom which directly caused the violation.   What's more, Defendant CAPTAIN RICHARD MORRIS had a duty to intervene to prevent the violation of Plaintiff's Constitutional rights, he had a reasonable opportunity to intervene, and he failed to intervene.  What's more, Defendant CAPTAIN RICHARD MORRIS approved Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions, his decision to take those actions, and the basis for those decisions and actions, which amounts to ratification.

92.     Here, Defendant CHIEF HERBERT GILBERT, as a supervisor to Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM, had actual knowledge of his subordinate's violation of Plaintiff's Constitutional rights and acquiesced in that violation, and he, with deliberate indifference to the consequences, established and maintained a policy, practice, and/or custom which directly caused the violation.  Additionally, he followed the unconstitutional custom of excessive force, was aware that an unreasonable risk existed in that practice and that same would result in physical confrontation and personal injury or death, was deliberately indifferent to that risk, and that following the unconstitutional custom and failing to implement a Constitutional policy would result in the violation of Plaintiff's Constitutional rights.  What's more, Defendant

CHIEF HERBERT GILBERT had a duty to intervene to prevent the violation of Plaintiff's Constitutional right, he had a reasonable opportunity to intervene, and he failed to intervene. What's more, Defendant CHIEF HERBERT GILBERT approved Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's actions, his decision to take those actions, and the basis for those decisions and actions, which amounts to ratification.  Defendant CAPTAIN RICHARD MORRIS's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

93.    Here, THE CITY OF MADISONVILLE, through its Madisonville Police Department, has *Monell* liability for its constitutionally deficient policy; its constitutionally deficient practice, custom, and usage; its supervisory responsibility failures of Defendants CAPTAIN RICHARD MORRIS and CHIEF HERBERT GILBERT of Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM; its ratification of Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's decision, actions, and the basis for his decisions and actions; and for failure to train and supervise, as set forth below.  Defendant THE CITY OF MADISONVILLE's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

94.    Plaintiff seeks unliquidated damages within the jurisdictional limitations of the court.

95.     Additionally, Plaintiff seeks punitive damages against DEFENDANT OFFICERS because

they:

a.      acted with conscious indifference to the possibility that they would unnecessarily injure Plaintiff under the circumstances;

b.      acted with reckless or callous indifference to Plaintiff's federally protected rights;

c.      acted with deliberate indifference to the likelihood that they would violate Plaintiff's constitutional rights by using excessive force that was unjustified by the need;

d.      recklessly trampled on Plaintiff's clearly established constitutional rights through plainly unlawful conduct;

e.      acted in a grossly negligent manner;

f.      knew Plaintiff did not present a danger to himself or other persons in the immediate vicinity;

g.      acted with conscious indifference to Plaintiff's rights when they utilized force in excess of any need at the time of such arrest;

h.      acted with conscious indifference to Plaintiff's rights when they used force that caused serious injuries to Plaintiff; and/or

i.      recklessly trampled on Plaintiff's clearly established constitutional rights through plainly unlawful conduct.

## IX.     CAUSES OF ACTION — COUNT 4: 42 U.S.C. 1983 FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE[14] (AS TO THE CITY OF MADISONVILLE)

96.     Plaintiff incorporates by reference, as though set forth fully herein, the background and

factual allegations contained in paragraphs 13-14, 15-40, 41-57, and EXHIBIT 1 to support

---

[14] An unconstitutional custom or policy may also be shown by evidence of deficient or inadequate training, supervision, or hiring of law enforcement officers by municipal officials. *City of Canton v. Harris*, 489 U.S. 378 (1989); *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997); *Wellington v. Daniels*, 717 F.2d 932 (4th Cir. 1983).

Plaintiff's elements, claims, causes of action, and counts.

97.     Defendant THE CITY OF MADISONVILLE failed to train, supervise, and discipline its employees amounting to a deliberate indifference to the Plaintiff's constitutional rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).  Deficient employment decisions regarding training, supervision, and discipline can subject a governmental entity to §1983 liability.  *See Brown*, 520 U.S. 397 (1997); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1417 (5th Cir. 1996).

98.     At all times relevant, Defendant THE CITY OF MADISONVILLE had a duty to train, supervise, and discipline their employees and agents, and Defendant THE CITY OF MADISONVILLE breached those duties.

99.     Defendant THE CITY OF MADISONVILLE breached those duties, in part, by:

   a.   improperly training, authorizing, encouraging, or directing DEFENDANT OFFICERS: (i) on proper protections to permit one's clearly established, constitutional right to video record police; (ii) on proper search and seizure; (iii) on proper arrest and to protect against false arrest; (iv) on proper use of force; (v) on proper intervening; and (vi) on proper policies, practices, customs, and usages to secure and not infringe on Constitutional rights;

   b.   improperly supervising DEFENDANT OFFICERS: (i) on proper protections to permit one's clearly established, constitutional right to video record police; (ii) on proper search and seizure; (iii) on proper arrest and to protect against false arrest; (iv) on proper use of force; (v) on proper intervening; and (vi) on proper policies, practices, customs, and usages to secure and not infringe on Constitutional rights;

   c.   improperly disciplining DEFENDANT OFFICERS: (i) on proper protections to permit one's clearly established, constitutional right to video record police; (ii) on proper search and seizure; (iii) on proper arrest and to protect against false arrest; (iv) on proper use of force; (v) on proper intervening; and (vi) on proper policies, practices, customs, and usages to secure and not infringe on Constitutional rights; and

   d.   failing to investigate allegations of: stopping one's clearly established, Constitutional right to videorecord police, improper search and seizure; false arrest;

excessive force; failure to intervene; and unconstitutional polices, practices, customs, and usages.

100.    Plaintiff has shown (1) THE CITY OF MADISONVILLE's training procedures were inadequate; (2) THE CITY OF MADISONVILLE's policymakers were deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused Plaintiff's injuries and damages.  *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000).  Second, even if THE CITY OF MADISONVILLE's training program does not prevent constitutional violations, THE CITY OF MADISONVILLE is still liable because its makers were put on notice that a new program was called for.  *Bd. of the County Comm'rs v. Brown*, 520 U.S. at 407-408.  "Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action— the 'deliberate indifference'—necessary to trigger municipal liability."  *Id.* (citing *Canton* v. *Harris,* 489 U.S. 378, 390 n. 10 (1989).  Third, the U.S. Supreme Court in *Brown* also stated that it did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a governmental entity has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger entity liability, which is the case here.  *Id.* at 409 (citing *Canton v. Harris*, 489 U.S. at 390, and n. 10 ("It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need")).  Here, for example, DEFENDANT OFFICERS' actions were uniform, consistent, in collaboration with one another, and were ratified by all involved.

101.    *Inter alia*, THE CITY OF MADISONVILLE's lack of training, supervision, and discipline on use of force and excessive force deprived Plaintiff of his clearly established Constitutional rights – rights secured by the US Constitution, which actions amounted to deliberate indifference and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the deprivation of his Constitutional rights, the injuries, and damages.

102.    Defendant THE CITY OF MADISONVILLE's failure to supervise and their lack of training and lack of enforcement of their written audio/visual-recording policy deprived Plaintiff of his clearly established Constitutional rights by allowing the use of force and excessive force to go with impunity and ignorance to same, which actions amounted to deliberate indifference and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the deprivation of his Constitutional rights, the injuries, and damages.

103.    What's more, Defendant THE CITY OF MADISONVILLE, a municipal actor, disregarded a known or obvious consequence of its action to not implement a proper policy on permitting and protecting one's clearly established, Constitutional right to video record police, which violation would devolve into unconstitutional search and seizure, arrest, excessive force, and ratification.

104.    What's more, Defendant THE CITY OF MADISONVILLE was on actual or constructive notice of the need for training, supervision, and discipline because of a pattern of similar unconstitutional acts by its officers occurred within a relevant period of time before the incident.

105.    What's more, Defendant THE CITY OF MADISONVILLE acted in conscious disregard of the constitutional rights of its residents – namely, Plaintiff – by failing to train, supervise, and discipline its officers.

106.    What's more, the unconstitutional consequences of failing to train are and were so patently obvious to Defendant THE CITY OF MADISONVILLE that it is liable under § 1983 without proof of a pre-existing pattern of violations.

107.    Defendant THE CITY OF MADISONVILLE failure to adequately train, supervise, and discipline DEFENDANT OFFICERS amounted to deliberate indifference to Plaintiff's rights under the United States Constitution.

108.    Defendant THE CITY OF MADISONVILLE ratification and/or concealment of DEFENDANT OFFICERS' actions or omissions amounted to deliberate indifference to Plaintiff's rights under the United States Constitution.

109.    This policy is tacitly or overtly sanctioned, as evidenced by the conduct of THE CITY OF MADISONVILLE failure to train, supervise, investigate, and discipline any of the officers involved in this incident amounting to deliberate indifference to Plaintiff's constitutional rights.

110.    *Monell* liability can be imputed to DEFENDANTS because there was a failure to train the police officers in this case in the continuum of using force, making arrests based upon probable cause, and the First Amendment requirements that citizens can video record police in public. In the present case, there is a pattern of this sort of conduct evidenced by the criminal charges levied against Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM for official oppression. Because of that incident in conjunction with this case, Plaintiff prevails on any question of law concerning whether *Monell* liability can be imputed to the city for one constitutional violation. *Brown v. Bryan County, OK*, 219 F.3d 450 (5th Cir. 2000).

111.    DEFENDANTS' actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

112.    Plaintiffs seek unliquidated damages within the jurisdictional limitations of this court.

## X.    CAUSES OF ACTION — COUNT 5: 42 U.S.C. 1983 VIOLATION OF DUE PROCESS (AS TO ALL DEFENDANTS)

113.    Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained in paragraphs 13-14, 15-40, 41-57, and EXHIBIT 1 to support Plaintiff's elements, claims, causes of action, and counts.

114.    Plaintiff's constitutional right to due process as a free citizen was:

  a.      secured to him by the Fourteenth Amendment to the United States Constitution

  b.      violated by DEFENDANT OFFICERS at the scene of the incident, and by Defendant THE CITY OF MADISONVILLE; and

  c.      clearly established within both the Fifth Circuit and the Southern District of Texas

115.    On April 3, 2020, DEFENDANTS violated Plaintiff's Fourteenth Amendment right to Due Process when they:

  a.      used unnecessarily excessive force;

  b.      caused serious injuries to Plaintiff's;

  c.      used excessive force without furthering any legitimate penological interest;

  d.      used said excessive force in bad faith, maliciously, and recklessly; and

  e.      by using excessive force that was objectively unreasonable under the

circumstances.

116.  DEFENDANTS' conduct was:

    a.    deliberate and purposeful;

    b.    was plainly incompetent;

    c.    a knowing violation of the law;

    d.    predicated upon the patently unreasonable belief that the conduct herein was reasonable;

    e.    an intentional violation of the law;

    f.    consciously and deliberately indifferent to Plaintiff's constitutional rights and safety;

    g.    performed while knowingly disregarding the obvious risk that the above actions would designedly result in his inability to comply with any officer's verbal commands or physical forces

    h.    a significant threat to Plaintiff's clearly established constitutional right to remain free from Due Process violations and excessive force; and

    i.    evidences unreasonable misunderstandings of their respective powers and responsibilities.

117.  No reasonable officer could ever believe that Plaintiff's conduct herein warranted the reckless, malicious, bad faith, and deliberately indifferent abuse perpetrated by DEFENDANTS herein.

118.  Plaintiff seeks punitive damages against DEFENDANT OFFICERS  because they:

    a.    knew they lacked constitutional authority to treat Plaintiff the way they did under the circumstances herein;

    b.    acted with conscious indifference to the possibility that they were performing unreasonably unlawful acts;

    c.    acted with reckless or callous indifference to Plaintiff's federally protected rights;

d.  recklessly violated Plaintiff's clearly established constitutional rights to remain free from Due Process violations; and

e.  acted in a grossly negligent manner.

119.  Defendant THE CITY OF MADISONVILLE and its DEFENDANT OFFICERS, namely Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM, used excessive force against Plaintiff – to wit:

a.  when they went hands-on with Plaintiff when Plaintiff was engaged in a lawful, constitutionally-protected act;

b.  when DETECTIVE SERGEANT LUCAS CUNNINGHAM flung Plaintiff's arm behind his back and arched upwards, putting stress on the scapula, shoulder, and rotator cuff;

c.  when they flung and body slammed Plaintiff to the ground above an upright, exposed metal pipe capable of impaling and killing Plaintiff;

d.  when they were trying to force Plaintiff to his stomach above an upright, exposed metal pipe capable of impaling and killing Plaintiff – causing Plaintiff to arch his back backwards at the waist and back, thereby injuring Plaintiff's back; and

e.  when DETECTIVE SERGEANT LUCAS CUNNINGHAM lifted Plaintiff from the ground by the handcuff chain links and flung Plaintiff around, putting stress on the scapula, shoulder, and rotator cuff.

120.  Defendant THE CITY OF MADISONVILLE and its DEFENDANT OFFICERS, namely Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's, conduct was "deliberate decision to deprive a person of life, liberty, or property."

121.  Defendant THE CITY OF MADISONVILLE and its DEFENDANT OFFICERS, namely Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM's, action "can properly be

characterized as conscience shocking, in a constitutional sense[15]" and/or was recklessness, gross negligence, or deliberate indifference to the rights of Plaintiff.

122.    Plaintiff suffered "(1) an injury," "(2) which resulted from the use of force that was clearly excessive to the need," and "(3) the excessiveness of which was objectively unreasonable" when DEFENDANTS used excessive force against Plaintiff, as described above.

123.    Defendant THE CITY OF MADISONVILLE implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices.  These included, among other things, allowing Defendant THE CITY OF MADISONVILLE and its DEFENDANT OFFICERS, namely Defendant DETECTIVE SERGEANT LUCAS CUNNINGHAM, to unconstitutionally and excessively use force in violation of the United States Constitution.

124.    Defendant THE CITY OF MADISONVILLE failure to adequately train, supervise, and discipline DEFENDANT OFFICERS amounted to deliberate indifference to Plaintiff's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

125.    Defendant THE CITY OF MADISONVILLE's ratification and/or concealment of DEFENDANT OFFICERS' actions or omissions amounted to deliberate indifference to Plaintiff's

---

[15] Conduct that "shocks the conscience" is the type that violates the "decencies of civilized conduct."  *Rochin v. California*, 342 U.S. 165, 172-73 (1952).  It is also conduct that is so brutal and offensive that it does not comport with "traditional ideas of fair play and decency." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "shock the conscience" standard is found "at the ends of the tort law's spectrum of culpability."  *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).  As a result, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to give rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

126.    What's more, Defendant THE CITY OF MADISONVILLE's continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees establishes the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 407 (U.S. 1997).

127.    DEFENDANTS' actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

128.    Plaintiffs seek unliquidated damages within the jurisdictional limitations of this court.

### XI.    CAUSES OF ACTION — COUNT 6: TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109. TEXAS TORT CLAIMS ACT (AS TO THE CITY OF MADISONVILLE)

129.    Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained in paragraphs 13-14, 15-40, 41-57, and EXHIBIT 1 to support Plaintiff's elements, claims, causes of action, and counts.

130.    On April 3, 2020 and all times material hereto, DEFENDANT OFFICERS were employees of Defendant THE CITY OF MADISONVILLE.

131.    All acts or omissions of DEFENDANT OFFICERS mentioned herein were committed within the scope of employment and therefore Defendant THE CITY OF MADISONVILLE, as

principals, are liable for the actions of its agent(s), DEFENDANT OFFICERS, under the doctrine of *respondeat superior.*

132.   Defendant THE CITY OF MADISONVILLE is not immune from liability or suit regarding counts pertaining to violations of 42 U.S.C. §1983.

133.   As to Defendant THE CITY OF MADISONVILLE, the Texas Legislature has waived immunity under the Tort Claims Act because Plaintiff's injuries were proximately caused by the use or condition of personal property – namely, Plaintiff's injuries, inter alia, were caused by: DETECTIVE SERGEANT LUCAS CUNNINGHAM when he lifted Plaintiff from the ground by the handcuff chain links (a piece of tangible, personal property), as an instrument against which to inflict injury, pain, and restrain Plaintiff, and then flung Plaintiff around, putting stress on the scapula, shoulder, and rotator cuff and causing injuries and damages suffered by Plaintiff, as set forth more fully below.

134.   Defendant THE CITY OF MADISONVILLE would be liable were they private persons, and no exception to waiver of immunity applies because the aforementioned actions violated 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the U.S. Constitution.

135.   Therefore, should the DEFENDANTS be found liable for counts in this cause, Plaintiff demands that, pursuant to TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a)(1), *et seq.*, Defendant THE CITY OF MADISONVILLE pay any judgment obtained against DEFENDANTS.

136.   No notice of claim is necessary here, as Plaintiff gave notice of his rights, the violation of those rights, and his intent to seek legal redress to DEFENDANT OFFICERS.

137.     Here, (1) Defendant THE CITY OF MADISONVILLE is a governmental unit; (2) the act that Defendant THE CITY OF MADISONVILLE is sued for is governmental; (3) Defendant THE CITY OF MADISONVILLE's immunity from suit is waived; (4) Defendant THE CITY OF MADISONVILLE's immunity from liability is waived; (5) there are no exceptions to waiver of Defendant THE CITY OF MADISONVILLE's immunity from liability; and (6) presuit notice was provided and not necessary. TEX. CIV. PRAC. & REM. CODE §101.021(1); DeWitt v. Harris County, 904 S.W.2d 650, 654 (Tex. 1995).

138.     DEFENDANTS' actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

139.     Plaintiffs seek unliquidated damages within the jurisdictional limitations of this court.

## XII.   JURY DEMAND

140.     Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## XIII.   DAMAGES

141.     As a result of the actions and circumstances described above, Plaintiff has suffered injuries and damages including but not limited to one or more of the following:

   a.     Nominal Damages.

   b.     Actual Damages.

   c.     Compensatory Damages.

d.      Past and future physical injuries, impairment, inconvenience, and disfigurement;

e.      Past and future pain and suffering;

f.      Past and future mental anguish, emotional distress, anger, and humiliation;

g.      Past and future economic losses and loss of earning capacity;

h.      Past and future medical expenses;

i.      Presumed Damages;

j.      Attorney's Fees, pursuant to 42 U.S.C. §§ 1983, 1988, *et seq*.;

k.      Expert Fees, pursuant to 42 U.S.C. §§ 1983, 1988, *et seq*.;

l.      Punitive Damages, as to DEFENDANT OFFICERS;

m.      Unliquidated damages within the jurisdictional limits of this court; and

n.      Pre-judgment and post-judgment interest.

## XIV.   <u>ATTORNEY'S FEES</u>

142.    Plaintiff is entitled to recover attorneys' fees and costs under 42 U.S.C. §§ 1983 and 1988.

## XV.   <u>PRAYER FOR RELIEF</u>

143.    For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against DEFENDANTS consistent with the relief requested herein and award the Plaintiff actual damages and punitive damages in an amount to be determined by Plaintiff's jury, along with costs of this action including reasonable attorney fees, and for any and all other relief, at law or in equity, to which Plaintiff may show himself justly entitled.

Dated: March 3, 2021

Respectfully Submitted,

*/s/ Alexander J. Houthuijzen*
**Alexander J. Houthuijzen**
Texas Bar No. 24101224
Fed ID No. 3083690
917 Franklin St. 230
Houston, Texas 77002
(713) 600-9902
(832) 565-9003
alex@alexthedefender.com

*—AND—*

**GILDE LAW FIRM, PLLC**

/s/ *Bradford J. Gilde*
BRADFORD J. GILDE
TSB#: 24045941
5535 Memorial Dr., Suite F, No.154
Houston, TX 77007
281-973-2771 – facsimile
281-973-2772 – phone
gildelawfirm@me.com

**ATTORNEYS FOR PLAINTIFF**